UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

                                        Chapter 7

JOANNE D. SCHULTER
*aka* JOANNE D. BEVILACQUIA,                Case No. 14-43538-nhl

                    Debtor.
---------------------------------------------------------------x
ROBERT L. GELTZER, as Trustee of the Estate
of Joanne D. Schulter *aka* Joanne D. Bevilacquia,

                    Plaintiff,              Adv. Pro No. 15-01176-nhl

      v.

ANTONIO BEVILACQUA,

                    Defendant.
---------------------------------------------------------------x

## DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

<u>APPEARANCES:</u>

Robert L. Geltzer, Esq.
The Law Offices of Robert L. Geltzer
1556 Third Avenue, Suite 505
New York, NY 10128
*Plaintiff, Chapter 7 Trustee*

Robert A. Wolf, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, NY 10018
*Attorneys for Plaintiff*

Derrick Hanna, Esq.
Mark Hanna, Esq.
Donna Vlahakis, Esq.
Hanna & Vlahakis
7504 Fifth Avenue
Brooklyn, NY 11209
*Attorneys for Defendant*

HONORABLE NANCY HERSHEY LORD
UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion (the "Motion") of Plaintiff Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee") of the Estate of Joanne D. Schulter a/k/a Joanne D. Bevilacquia (the "Debtor"), for summary judgment on the third cause of action set forth in the amended complaint, seeking entry of an order, pursuant to 11 U.S.C. § 363(h),[1] authorizing the Trustee to sell certain real property located at 218 Beacon Avenue, Staten Island, NY 10360 (the "Property"). Defendant Antonio Bevilacqua (the "Defendant") filed opposition (the "Opposition") to the Motion, seeking to prevent the sale based on the imposition of a constructive trust, or, alternatively, a defense of promissory estoppel. For the reasons set forth below, the Trustee's Motion for summary judgment is granted and the Defendant's Opposition is overruled.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (M), (N), and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

The following facts are uncontested. The Defendant in this action is the former husband of the Debtor. Trustee's LBR 7056-1 Stat. ¶ 4, ECF No. 51-20.  The two married in August of 2000. *Id.* at ¶ 10. On or about October 23, 2003, the Debtor and the Defendant jointly made a written offer to purchase the Property, and, around the same time, jointly applied for a purchase money mortgage from Washington Mutual Bank. *Id.* at ¶ 12. However, due to the Defendant's credit

---

[1] Unless otherwise indicated, all statutory references are to 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

problems related to certain alimony and child support obligations to his first wife, the bank would not agree to a mortgage loan to which the Defendant was a party. *Id.* at ¶¶ 13–14; Apr. 4, 2016 Depo. Tr. at 29:20–23, ECF No. 51-3. It was, however, willing to approve the Debtor, alone, for mortgage financing. *See* LBR 7056-1 Stat. ¶ 15, ECF No. 51-20; Depo. Tr. at 22:23–25, ECF No. 51-3. Consequently, the Debtor purchased the Property solely in her name, for a purchase price of $750,000 and settlement charges of $37,230.04, LBR 7056-1 Stat. ¶ 17, ECF No. 51-20; Settlement Stat., ECF No. 51-5, pursuant to a deed dated March 30, 2004 (the "2004 Deed"), LBR 7056-1 Stat. ¶ 16, ECF No. 51-20; 2004 Deed, ECF No. 51-4.

The Debtor financed the purchase in substantial part by taking two secured loans from Washington Mutual Bank, which JPMorgan Chase Bank ("Chase") subsequently acquired. LBR 7056-1 Stat. ¶ 18, ECF No. 51-20. Specifically, the Debtor executed a promissory note dated March 30, 2004 in the original principal amount of $413,000, secured by a first mortgage on the Property (the "First Mortgage"), *id.* at ¶ 19; 1st Mortg., ECF No. 51-6, as well as a home equity loan with a maximum credit limit of $149,500, secured by an equity line of credit mortgage on the Property (the "Second Mortgage" and, together with the First Mortgage, the "Chase Mortgages"), LBR 7056-1 Stat. ¶ 20, ECF No. 51-20; 2d Mortg., ECF No. 51-7.

The Defendant, for his part, received a gift from his mother of $350,000, and made those funds available to the Debtor for use toward the purchase price of the Property. LBR 7056-1 Stat. ¶ 21, ECF No. 51-20. In exchange, the Debtor executed a note in the Defendant's favor (the "Defendant's Note"), secured by a mortgage against the Property in the amount of $350,000 (the "Defendant's Mortgage"). Def. Note, ECF No. 51-8; Def. Mortg., ECF No. 51-9. The Defendant's Mortgage was not recorded. LBR 7056-1 Stat. ¶ 23, ECF No. 51-20.

The Property is a residential house with five bedrooms, three bathrooms, a pool, a two-car garage, and a finished basement that functions, in essence, as "a big studio apartment." *Id.* at ¶ 26. Shortly after the Debtor took title to the Property, she, the Defendant, and the Defendant's mother moved in, and for the next several years, she and the Defendant occupied the first floor and the Defendant's mother lived upstairs. *Id.* at ¶ 27. The Defendant's mother, who passed away in 2010 or 2011, did not pay rent. *Id.* at ¶¶ 28, 30–31.

In or around January of 2012, the Debtor and the Defendant separated, and the Debtor moved out of the Property at some point thereafter.[2] *Id.* at ¶ 32. The Defendant remained at the Property, and is currently residing in its finished basement. *Id.* at ¶ 29. Though the Defendant has children from his prior marriage, they are adults and do not live in the Property. *Id.* at ¶ 29.

Several events occurred on or about October 12, 2012. First, the Debtor and the Defendant refinanced the First Mortgage with Chase (the "Refinanced First Mortgage"), jointly executing a promissory note in Chase's favor in the principal amount of approximately $367,000. LBR 7056-1 Stat. ¶ 34, ECF No. 51-20; *see* Lock-In Agreement, ECF No. 51-10.

Second, the Debtor delivered to the Defendant a deed (the "2012 Deed") conveying a one-half undivided interest in the Property. LBR 7056-1 Stat. ¶ 35, ECF No. 51-20. Pursuant to the 2012 Deed, recorded in the Richmond County Clerk's Office on November 19, 2012, the Debtor and the Defendant each own an undivided one-half interest in the Property. *Id.* at ¶¶ 35–36; 2012 Deed, ECF No. 51-11.

Finally, the Debtor and the Defendant executed a document entitled "Discharge of Mortgage Note," which states: "Antonio Bevilacqua hereby certifies that the mortgage note dated March 30, 2004 made by Joanne Schulter is paid." Discharge Doc., ECF No. 51-12. This document

---

[2] The Debtor's petition reflects that her primary residence is 34 Edison Street, Staten Island, New York. Petition, ECF No. 1, Case No. 14-34538-nhl.

discharged the Debtor's obligations to the Defendant under the Defendant's Note and cancelled the Defendant's Mortgage in exchange for the Debtor's transfer to the Defendant of a one-half undivided interest in the Property. LBR 7056-1 Stat. ¶¶ 37–39, ECF No. 51-20.

To date, though the Defendant has disputed that this result was the parties' intention, the Debtor and the Defendant remain the record co-owners of the Property, with each owning a one-half undivided fee interest in the Property. *Id.* at ¶ 40. The Debtor remains a co-mortgagor on the Refinanced First Mortgage and the sole mortgagor on the Second Mortgage. *Id.* at ¶¶ 40–41.

On April 19, 2013, the Debtor and Defendant divorced. *Id.* at ¶ 42. According to a notarized letter executed by the Debtor and the Defendant on April 1, 2014, the Debtor and Defendant agreed to a certain separation of their property and debt (the "2014 Letter"). ECF No. 51-13. The 2014 Letter states, in part, that:

> I Antonio Bevilacqua and I Joanne Schulter have to come a [sic] mutual aggreement [sic] about our seperation [sic] of property and debt without using the courts or lawyers. We are having a mutual uncontested divorce and have agreed on all the terms amoungst [sic] each other.
>
> We have been separated since January 2012 and Antonio has been living at 218 Beacon Avenue. Joanne is renting at 34 Edison Street, SI NY 10306.
>
> Antonio Bevilacqua will get full ownership of the house we both owned at 218 Beacon Avenue Staten Island New York 10306. Joanne will no longer reside or own any part of the home. Antonio will continue to pay the mortgage & Home Equity Loan as he has been since 2011.
>
> Joanne Schulter will be obligated to pay all the Credit Debt owed by both parties except for the Chase Home Equity Loan on the house at 218 Beacon ave si ny [sic].

*Id.* Although the 2014 Letter provides that the Defendant will get full ownership of the Property, the parties never executed or recorded a deed to effectuate such a transfer. LBR 7056-1 Stat. ¶ 44, ECF No. 51-20. The Defendant concedes the same. *Id.*; Apr. 4, 2016 Depo. Tr. 86:4–5, ECF No. 51-3.

On July 11, 2014 (the "Filing Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. See Petition, ECF No. 1, 14-43538-nhl. On August 21, 2014, she filed schedules reflecting that, as of the Filing Date, she was a co-owner of the Property and that, by virtue of the Chase Mortgages, Chase was the holder of two claims secured by the Property. Scheds., ECF No. 51-14.

On October 7, 2015, the Trustee commenced this adversary proceeding against the Defendant by the filing of a complaint, as amended on October 15, 2015, seeking: (i) to avoid an alleged fraudulent conveyance made by the Debtor to the Defendant in connection with the transfer of the one-half interest in the Property; (ii) to recover from the Defendant the value of that transfer, alleged to be a fraudulent conveyance; and (iii) a judgment in favor of the Trustee permitting him to sell the Property free of the interest of the Defendant with such interest to attach to the net proceeds of sale. Am. Compl., ECF No. 4.

On February 16, 2016, the Defendant filed an amended answer to the amended complaint. Am. Answer, ECF No. 21. The amended answer alleges, in relevant part, that the "Debtor's interest in the subject property was limited to bare legal title as nominee on the deed but Debtor had no equity whatsoever," and that the Defendant has "sole ownership" of the Property. *Id.* at 4. On June 30, 2016, the Debtor amended her Schedule A/B in a manner that mirrored this assertion. *See* ECF No. 52, Case No. 14-43538-nhl.

The Court entered a Pretrial Scheduling Order and held several pretrial hearings in this adversary proceeding. Thereafter, the Trustee filed the instant Motion for summary judgment as to the third cause of action set forth in the amended complaint, seeking an order, pursuant to § 363(h), authorizing the Trustee to sell the Defendant's undivided one-half interest in the Property together with the estate's undivided one-half interest in the Property. Mot., ECF No. 51. The

Defendant filed his Opposition to the Motion, which, as amended, again raises the issue of the Defendant's sole ownership of the Property. Opp'n, ECF No. 56. In sum, the Defendant explains that he and the Debtor had long agreed that the Defendant would ultimately acquire full ownership of the Property, and that all of the acts outlined above were taken to that end. *See id.* at 8–11. On those grounds, the Defendant seeks the imposition of a constructive trust or, alternatively, an order precluding the sale of the Property on a theory of promissory estoppel. *See id.* The Trustee filed a reply to the Opposition. Reply, ECF No. 58.

Thereafter, the Court held a hearing on the Motion and the responses thereto, and the matter was taken under advisement.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankruptcy Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, the court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, drawing all inferences in that party's favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular cites to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of these facts, *see Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case such that a reasonable trier of fact could find in that party's favor. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at 586–87. That being the case, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Additionally, E.D.N.Y. Local Bankruptcy Rule 7056-1 requires that a motion for summary judgment be accompanied by "a separate statement of the material facts as to which the moving party contends there is no genuine issue to be tried." E.D.N.Y. LBR 7056-1. The rule further requires an opposing party to submit "a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried." *Id.* Failure to do so results in all material facts contained in the moving party's statement being deemed admitted. *Id.*

In the instant case, the Defendant failed to submit a separate statement of disputed material facts, and, as a result, the facts in the Trustee's statement, outlined above, are deemed admitted. *See id.* However, the "Background" section of the Defendant's Opposition, which he asserted was meant to serve the purpose of a statement of contested facts, *see* Nov. 1 Tr. 19:18–24, ECF No. 61, does not dispute the facts contained in the Trustee's statement so much as it simply supplies one additional fact—namely, that the Debtor and the Defendant had an agreement that the Debtor would hold the Property in her name, but for the benefit of the Defendant. *See* Opp'n 4–5, ECF No. 56. The admission of the Trustee's facts does not prevent the Court from entertaining the

Defendant's allegation, and it will therefore be addressed below. However, in so doing, the Court keeps in mind that self-serving affidavits and statements, standing alone, are insufficient to defeat summary judgment. *See BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996); *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 213 (E.D.N.Y. 2013); *see also Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## DISCUSSION

### *Sale of the Property Pursuant to 11 U.S.C. § 363(h)*

By the third claim for relief, the Trustee seeks authorization, pursuant to § 363(h) of the Bankruptcy Code, to sell the Property free and clear of the Defendant's interest. Mot., ECF No. 51. Section 363(h) of the Bankruptcy Code provides:

> (h) Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). The burden of proving each of the four statutory conditions enumerated above is on the Trustee. *Durand v. Ackerman*, No. 09–CV–3372 (JFB), 2010 WL 3834587, at *12 (E.D.N.Y. Sept. 27, 2010); *Sapir v. Sartorious*, 230 B.R. 650, 655 (S.D.N.Y. 1999); *In re Prakope*, 317 B.R. 593, 602 (Bankr. E.D.N.Y. 2004).

The Defendant has not contested three of § 363(h)'s requirements, and they are satisfied on the record before the Court. Subsection (1) is satisfied because the Property is residential real property, making "partition in kind impracticable." *In re Xiang Yong Gao*, 560 B.R. 50, 67 (Bankr. E.D.N.Y. 2016) (citing *In re Beck*, No. 8-10-09052-478, 2011 WL 3902820, at *8 (Bankr. E.D.N.Y. Sept. 6, 2011)). Similarly, subsection (2) is satisfied because the economic reality is that a sale limited to only the estate's interest in the Property would realize significantly less in proceeds than a sale of the Property as a whole, free and clear of the Defendant's interest. *See id.* Subsection (4) is satisfied because the Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. LBR 7056-1 Stat. ¶ 50, ECF No. 51-20. Therefore, the Court need only examine whether subsection (3) has been satisfied.

Section 363(h)(3) of the Bankruptcy Code "requires a balancing of the benefit to the estate of a sale free and clear of the co-owner's interest against the detriment such a sale would cause the co-owner to suffer." *Gao*, 560 B.R. at 67 (citing *Beck*, 2011 WL 3902820, at *8–9). The elements of this balancing test are established through a burden-shifting framework. *See id.* At the outset, "the Trustee must . . . establish that the proposed sale does in fact create a benefit to the estate." *Id.* (quoting *In re DeVanzo*, No. 8–08–75665–REG, 2010 WL 1780038, at *2 (Bankr. E.D.N.Y. May 3, 2010)). Once such a benefit has been established, the burden shifts to the Defendant to demonstrate the detriment that he would suffer as a result of a sale of his interest in the Property. *Id.*; *see also In re Grabowski*, 137 B.R. 1, 3 (S.D.N.Y.) (citing *Cameron v. Roemelmeyer*, 389 F.2d 599, 601 (5th Cir. 1968)), *aff'd*, 970 F.2d 896 (2d Cir. 1992). If the Defendant is successful, the Trustee must then demonstrate that the benefit to the estate outweighs the detriment shown. *Gao*,

560 B.R. at 67. "Ultimately, the Court's decision to allow a § 363(h) sale is an equitable judgment that is discretionary and fact driven." *Id.* (quoting *DeVanzo*, 2010 WL 1780038, at *5).

A benefit to the estate may be established through proof that the estate's portion of the net proceeds of the sale will exceed existing liens on the Debtor's interest in the property. *Id.* (citing *DeVanzo*, 2010 WL 1780038, at *4). The Trustee asserts that if the sale of the Property is authorized, the indebtedness under the Refinanced First Mortgage—for which both the Debtor and the Defendant are obligated—would be paid in full, as would the indebtedness under the Second Mortgage, for which the Debtor alone is liable, and thereafter, the net sale proceeds would be divided between the Debtor's estate and the Defendant. The Trustee further contends that from the estate's share of at least 50% of the sale proceeds, he would likely have sufficient funds to make distributions to administrative claimants, any other priority claimants, and general unsecured claimants.[3] Pl.'s Aff. in Supp. ¶ 54, ECF No. 51-2. A review of the record confirms these assertions. The Trustee's retained auctioneer, MYC & Associates, Inc., estimated that the fair market value of the Property is within the range of $850,000 to $900,000. *See* Yaverbaum E-Mail, ECF No. 51-18, Ex. Q. The Debtor's Schedules indicate that her liabilities totaled $536,674.36 as of the Filing Date, consisting of $359,398 on the Refinanced First Mortgage, $127,697 on the Second Mortgage, and $49,579.63 in general unsecured claims. *See* Pl.'s Aff. in Supp. ¶ 54, ECF No. 51-2; Scheds., ECF No. 13, Case No. 14-43538-nhl. These figures establish that the estate would benefit from a sale of the Property to the extent that the estimated sale proceeds would extinguish both liens and leave funds available for a distribution to administrative and unsecured

---

[3] The apportionment of the sale proceeds referenced and considered here is based on the uncontested fact that, pursuant to the 2012 Deed, the Debtor and the Defendant each own an undivided one-half interest in the Property. *See* LBR 7056-1 Stat. ¶¶ 35–36, ECF No. 51-20; 2012 Deed, ECF No. 51-11. The 50% figure does not take into account, and should not be construed as a determination on, the merits of the Trustee's other two causes of action that seek to avoid as a fraudulent conveyance the transfer effected by the 2012 Deed. *See* Am. Compl., ECF No. 4.

creditors. Accordingly, the burden shifts to the Defendant to demonstrate the harm that a sale of the Property would yield. *See Gao*, 560 B.R. at 67.

The Defendant has urged the Court to consider his detriment based on the Second Circuit's decision in *In re Persky*, 893 F.2d 15 (2d Cir. 1989). *See* Opp'n 18–20, ECF No. 56. There, the Circuit Court held that, in the context of "the sale of a non-debtor spouse's interest in the marital home," a defendant's detriment must be considered in terms of both economic and non-economic factors. *Persky*, 893 F.2d at 21. As to what might be included among such factors, the Second Circuit explained:

> In weighing detriment to the non-debtor spouses a number of variables must be considered when valuing their survivorship interests as well as their present possessory interests: for example, actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home.

*Id.* These factors contemplate the sale of a property held by tenancy by the entirety, which was the nature of the parties' interest in that case. *See id.* at 16.

Here, however, the Debtor and the Defendant do not hold the Property as tenants by the entirety. Instead, in accordance with the 2012 Deed, the parties are tenants in common. *See* Pl.'s Aff. in Supp. 7, ECF No. 51-2. As such, they do not hold survivorship interests, and the Court need not consider factors related to that issue, including the parties' life expectancies. *See DeVanzo*, 2010 WL 1780038, at *8.

On the factors that are relevant, the Defendant has not shown that a sale will be detrimental. His contribution to the purchase price was $350,000, which he received as a gift from his mother. LBR 7056-1 Stat. ¶ 21, ECF No. 51-20. Though this sum was once secured by the Defendant's Mortgage, the Defendant released the Debtor from her repayment obligation in exchange for the transfer of the one-half interest in the Property. *Id.* at ¶¶ 37–39. In reference to this transfer, the

Defendant has asserted that it could not be the case that he "cancelled his $350,000.00 note and mortgage for [a] $69,000.00 equity interest in the [P]roperty." Opp'n 8, ECF No. 56. Yet, this was indeed the actual effect of the transaction. To the extent that the Defendant is no longer entitled to the amount of his contribution, the sale does not deprive him of that sum, and he is left no worse off.

Similarly, a sale would not leave the Defendant without prospects for a new home. *See Persky*, 893 F.2d at 21. The Defendant is 57 years old, is employed by, and receives employment benefits from, Staten Island Hospital, and has a pension. LBR 7056-1 Stat. ¶ 48, ECF No. 51-20; Apr. 4, 2016 Depo. Tr. 66:12–67:4, 98:57, ECF No. 51-3. Additionally, if the Property is sold, the Defendant has a right of first refusal to match the highest offer obtained at the auction, and if he cannot do that, he may be entitled to one half of the net proceeds from the sale pursuant to § 363(j).[4] *See* 11 U.S.C. § 363(i), (j). This outcome would not be far from one the Defendant attempted to bring about on his own, when he retained a real estate broker in an attempt to sell the Property. *See* Pl.'s Aff. in Supp. 12, ECF No. 51-2; Depo. Tr. 104:21–106:20, ECF No. 51-3. While "financial compensation may not always be a completely adequate substitute for a roof over one's head," *Persky*, 893 F.2d at 21 (quoting *United States v. Rodgers*, 461 U.S. 677, 703–4 (1983)), there is little daylight between those two alternatives here.

Two further factors weigh against a finding of detriment. A handicap may also be considered, and, to this point, the Defendant asserted at the hearing on the Motion that he "hurt his back." Nov. 1 Tr, 33:8–11, ECF No. 61. However, this allegation does not appear in the Trustee's uncontested statement of facts, and the Defendant's mere assertion of the injury is not sufficient

---

[4] Again, this takes into account only the current state of affairs as reflected by the uncontested facts presented by the Trustee. It does not determine, and should not be construed as determining, the Trustee's fraudulent conveyance claims, which are not before the Court on this Motion.

to generate an issue for trial. *See W.R. Grace.*, 77 F.3d at 615 (self-serving statements insufficient to defeat summary judgment). Indeed, the Defendant provided no details or any evidence of his alleged disability. Yet, even if there were support for such a claim, it is unclear how this particular type of problem would make a sale of the Property detrimental. *See generally In re Coombs*, 86 B.R. 314, 318 (Bankr. D. Mass. 1988) (discussing the significance under § 363(h) of a disability that would make it difficult for the defendant to adapt to new surroundings). Finally, the Defendant resides at the Property without his children, who are, in any event, above the age of minority. LBR 7056-1 Stat. ¶ 29, ECF No. 51-20. The Defendant has therefore failed to demonstrate a detriment.

Furthermore, to the extent that the Defendant's arguments do demonstrate a detriment, it would still be outweighed by the benefit to the estate. A sale of the Property would result in a satisfaction of the indebtedness under the Refinanced First Mortgage, for which the Defendant is also liable. *See* LBR 7056-1 Stat. ¶ 34, ECF No. 51-20. This benefit would therefore accrue to both parties, and would ameliorate any detriment to the Defendant. The requirements of § 363(h) are therefore satisfied.

It must be noted at this point that the Defendant's assertion that he is the equitable owner of the Property is immaterial as it does not cast doubt on, or in any way affect, this conclusion. As described above, by the terms of the 2012 Deed, the parties own the Property as tenants in common. *Id.* at ¶¶ 35–36; 2012 Deed, ECF No. 51-11. As such, they each own an undivided one-half interest in the Property. *See DeVanzo*, 2010 WL 1780038, at *5–6 ("It is well-settled that tenants in common share a rebuttable presumption that each holds an equal undivided one-half interest in the subject premises." (quoting *C.Y. v. H.C.*, No. XX07, 2007 WL 1775506, at *1 (N.Y. Sup. Ct. May 30, 2007))). There is little basis provided to support any claim to the contrary.[5] But to the extent

---

[5] This point is discussed further *infra* relating to the Defendant's invocation of promissory estoppel and the effect of the 2014 Letter.

that such a claim carries any weight, it is more relevant to a distribution of the sale proceeds after sale than it is to whether a sale should occur in the first instance, as it does not, on the facts presented, alter the balance of the equities.

That being said, the assertion is also relevant to the Defendant's constructive trust and promissory estoppel claims, which will be considered in turn.

<u>*Constructive Trust*</u>

The Defendant seeks to impose a constructive trust on the Property based on the agreement between the Debtor and the Defendant that the "[P]roperty would be held in [the Debtor's] name only until such time as the Defendant could transfer the title into his name alone." Opp'n 12–13, ECF No. 56; Am. Answer ¶¶ 44–50, ECF No. 21. He asserts that this promise was made as early as 2004, when the Debtor purchased the Property solely in her own name. *See* Opp'n 1–2, ECF No. 56. He explains that the Defendant's Mortgage was executed contemporaneously with, if not as a part of, this agreement, and evinces the parties' "true intention" to eventually re-title the Property solely to the Defendant. *Id.*

When a bankruptcy case is commenced, an estate is created, which, subject to certain exceptions, contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). A notable exception to this rule, however, is that the bankruptcy estate does not include "property of others in which the debtor ha[s] some minor interest such as a lien or bare legal title." *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989) (quoting *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8 (1983)); *see* 11 U.S.C. § 541(d). Where the debtor's "conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions."

14

*Howard's Appliance*, 874 F.2d at 93 (quoting *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1136 (8th Cir. 1984)).

In determining whether a constructive trust should be imposed, state law controls. *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004); *see In re Fetman*, 567 B.R. 702, 706 (Bankr. E.D.N.Y. 2017). "New York law generally requires four elements for a constructive trust: '(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject *res* made in reliance on that promise; and (4) unjust enrichment.'" *First Cent.*, 377 F.3d at 212 (quoting *United States v. Coluccio*, 51 F.3d 337, 340 (2d Cir. 1995)). In applying these factors, the Court must be mindful that, because imposing a constructive trust would effectively deprive the bankruptcy estate of the Property at the expense of the Debtor's other creditors, it must "act very cautiously" so as not to compromise the goals of the Bankruptcy Code. *Id.* at 217–18; *see also Fetman*, 567 B.R. at 706.

While the Defendant has demonstrated the existence of a confidential relationship between himself and the Debtor when the Property was purchased, *see Barchella v. Barchella*, 44 A.D.3d 696, 697 (N.Y. App. Div. 2d Dep't 2007) (recognizing a fiduciary relationship between spouses), he has not made a sufficient showing with respect to the existence of a promise at that time. The only support offered in favor of this conclusion are the affidavits of the Debtor, the Defendant, and the Defendant's brother, all of which assert, without more, that a promise was made between the Debtor and Defendant. *See* Affidavits, ECF Nos. 56-1–56-3. Though the Debtor has claimed that the Defendant's Mortgage and Defendant's Note were executed so that she "owed [the Defendant] th[e] money for the house," it is unclear how this arrangement might lead one to conclude that it was intended to grant the Defendant an equitable interest in the entire Property. To the contrary, the terms of the Defendant's Mortgage created a security interest, and the Defendant's Note a

debtor-creditor relationship. *See Bernkopf Goodman, LLP v. Sheepshead Landing LLC*, No. 27062/2008, 2010 WL 4910170, at *1 (N.Y. Sup. Ct. Kings Cty. Sept. 28, 2010) ("When a note and a mortgage are executed for the purposes of a secured loan, the Note is the agreement which creates a creditor debtor relationship; the mortgage merely secures the loan specified in the Note."). The Defendant's assertion that the Property was meant to be solely his own is also undermined by the uncontested facts that the initial offer on the Property was made *jointly* by the Debtor and the Defendant, and that, in exchange for the release of the Defendant's Mortgage, he was granted only a one-half interest in the Property. *See* LBR 7056-1 Stat. ¶ 12, ECF No. 51-20.

However, even if it were possible to infer a promise from the parties' arrangement, the Defendant has still failed to show that he made a transfer in reliance on that promise. *See First Cent.*, 377 F.3d at 212. Though the Defendant has asserted that he has paid for the Property's expenses, including the mortgages, maintenance, and taxes, he has not offered a single piece of evidence to substantiate that claim.

Finally, of particular importance to the constructive trust inquiry is the unjust enrichment criterion. *See First Cent.*, 377 F.3d. at 212 ("[T]he purpose of the constructive trust is prevention of unjust enrichment." (quoting *Simonds v. Simonds*, 45 N.Y.2d 233, 242 (1978))). As this Court explained in *In re Fetman*:

> Within this Circuit, a constructive trust has been imposed against a bankruptcy estate *only* where a court has found some pre-petition unjust conduct by the debtor relating to the subject property. The reason for this apparent limitation is that, under New York law, a constructive trust is meant to be "fraud-rectifying," rather than "intent-enforcing." That is, a constructive trust should not be imposed merely to give effect to a prior agreement, but instead should be reserved for situations in which a party's misconduct gives rise to his unjust enrichment.

567 B.R. at 706 (citations omitted). The Defendant's constructive trust claim fails on this ground as well.

While the Defendant asserts that the parties' intent was for the Defendant to own the Property, there is no contention of any fraud or inequitable conduct on the part of the Debtor in failing to convey the entirety of the Property to the Defendant. *See* Nov. 1 Tr. 11:9–13, ECF No. 61. Though the Defendant has claimed that the "estate . . . is seeking to enrich itself and dissolve its debts by selling the [P]roperty" to the detriment of the Defendant, this conduct is not attributable to the Debtor. Opp'n 14, ECF No. 56. To the contrary, according to the Defendant's own submissions, the Debtor has stated that she had no intention of selling the Property, and "wanted to drop the [b]ankruptcy case" when the Trustee raised the possibility of a sale. Debtor's Letter to the Trustee 3, ECF No. 56-7. Similarly, the Debtor states in her affidavit attached to the Defendant's Opposition that "I agreed that I would change the title to his name only. We decided to wait a year for his credit to get established and he would get a mortgage on his own." Debtor's Aff. ¶ 11, ECF No. 56-2. That the parties' ultimately failed to give effect to this agreement does not, on its own, afford this Court the ability to impose a constructive trust. For the Court to do so would be to engage in an act of "intent enforcement" that is contrary to the constructive trust's purpose. *First Cent.*, 377 F.3d at 212.

Moreover, far from yielding an unjust outcome, the fact that the Debtor held title to the Property in her own name conferred a considerable benefit on the Defendant in allowing him to reside in the Property. If not for the Debtor's ability to purchase the Property, the Defendant's poor credit would have prevented him from having any interest in the Property whatsoever, including a possessory interest. *See* Apr. 4, 2016 Depo. Tr. at 29:20–23, ECF No. 51-3. The Debtor also brought about this possibility at a considerable detriment to herself, as she alone was liable on the initial Chase Mortgages, and remains solely liable on the Second Mortgage. LBR 7056-1 Stat. ¶¶ 19–20, 40–41, ECF No. 51-20.

*Promissory Estoppel*

The Defendant's promissory estoppel defense is also predicated on the allegation that he was promised title to the Property. Through this defense, he seeks to obtain the benefit of that promise—that is, the transfer of the Property.

Under New York law, a transfer of real property is subject to the State's Statute of Frauds, and must therefore be in writing to be enforceable. N.Y. Gen. Oblig. Law § 5-703 ("An estate or interest in real property, other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agent, thereunto authorized by writing."). *See generally In re Cross Island Plaza, Inc.*, 2015 WL 4610382, at *8–9 (Bankr. E.D.N.Y. July 31, 2015) (providing an overview of § 5-703 of the New York General Obligations Law). The Debtor and the Defendant have provided no evidence of a deed or conveyance in writing purporting to transfer the Debtor's remaining undivided one-half interest. Although the Defendant's Mortgage was indeed based on a writing—albeit one that was never recorded—it did not by its terms convey title to the Property. LBR 7056-1 Stat. ¶¶ 21-23, ECF No. 51-20. Instead, as noted above, it and the Defendant's Note created a security interest and a debtor-creditor relationship, respectively. *See Bernkopf Goodman*, 2010 WL 4910170, at *1.

The 2014 Letter is also insufficient to convey the Property because it lacks the necessary "technical operative words" to effect a transfer. *See Cohen v. Cohen*, 188 A.D. 933, 933 (N.Y. App. Div. 1919). Specifically, that the Debtor and Defendant have agreed to a separation of property by which the Defendant "*will* get full ownership of the house," 2014 Letter, ECF No. 51-

13 (emphasis added), does not evince a "*present* intent to convey an interest." *Cayea v. Lake Placid Granite Co.*, 245 A.D.2d 659, 660 (N.Y. App. Div. 3d Dep't 1997) (emphasis added); *see also W. New York Land Conservancy, Inc. v. Town of Amherst*, 4 A.D.3d 889, 894 (N.Y. App. Div. 4th Dep't 2004) (emphasizing the absence of language showing a "present intent to be bound to sell real property" in finding that a resolution failed to "embody all material terms of a land contract"). At best, the 2014 Letter constitutes an agreement to re-title the Property at some future date, and therefore does not meet § 5-703's requirements.

The effect of the statute of frauds is significant here because it alters the elements required to make out a prima facie promissory estoppel defense. Generally, "[t]o establish a viable cause of action sounding in promissory estoppel, a plaintiff must allege (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise." *Rogers v. Town of Islip*, 230 A.D.2d 727, 727 (N.Y. App. Div. 2d Dep't 1996) (citing *Ripple's of Clearview, Inc. v. Le Havre Assocs.*, 88 A.D.2d 120, 122 (N.Y. App. Div. 2d Dep't 1982)). However, where promissory estoppel is alleged in order to overcome the statute of frauds, the injury sustained must be "unconscionable," and "beyond that which flows naturally . . . from the non-performance of the unenforceable agreement." *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir. 1994).

That being the case, even if it is assumed that a promise was made on which the Defendant relied, he still has the burden of showing a resulting "unconscionable" injury. However, he has made no such showing. As was discussed above, the assertion is that he will be injured by the "loss of [his] initial $350,000 deposit," Opp'n 17, ECF No. 56, is contradicted by the fact that he voluntarily released the Debtor from her obligation to repay this sum in exchange for a one-half interest in the Property, *see* LBR 7056-1 Stat. ¶¶ 37–39, ECF No. 51-20. In this light, the loss of

the right to the return of his deposit is not an injury, but was part and parcel of the transfer effected by the 2012 Deed. To the extent that he feels injured by the result of this transaction, it is nevertheless a result that he brought upon himself. *See Robins v. Zwirner*, 713 F. Supp. 2d 367, 377 (S.D.N.Y. 2010) ("'To invoke the power that equity possesses to trump the Statute of Frauds,' a plaintiff must suffer a greater injury than one that is both predictable and, to a certain degree, the consequences of the Plaintiff's own choices." (citation omitted) (quoting *Merex*, 29 F.3d at 826)). The Trustee is therefore entitled to summary judgment on this defense.

## CONCLUSION

Accordingly, the Court finds that under the undisputed facts of this case, the requirements for approval of a sale of the Property pursuant to § 363(h) have been satisfied, and that no genuine issue remains to be tried with respect to the third cause of action. The Motion is therefore Granted.

IT IS SO ORDERED.

**Dated: March 31, 2018**
**Brooklyn, New York**

_____
**Nancy Hershey Lord**
**United States Bankruptcy Judge**